IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CEDRIC LOFTON,

        Plaintiff,

    v.

DSW SHOE WAREHOUSE, INC.,

        Defendant.

CIVIL ACTION FILE

1:14-cv-3640-ODE-GGB

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Cedric Lofton's motion for default judgment, (Doc. 6), Defendant DSW Shoe Warehouse's[1] request for attorneys' fees, (Doc. 13 at 7-8), and the Defendant's motion to dismiss, (Doc. 7).

## I.    Procedural Background

On November 12, 2014, Lofton filed a complaint raising seven claims: (1) sexual harassment; (2) sexual discrimination; (3) retaliation; (4) assault; (5) battery; (6) negligent hiring; and (7) intentional infliction of emotional distress. (Doc. 1 at 1).  The first three claims were raised under Title VII, and the rest were raised under Georgia law.  He also listed separate claims for punitive damages and

---

[1] In its motion to dismiss, the Defendant requests that its party designation be changed to its proper corporate name: "DSW Shoe Warehouse, Inc." (Doc. 7 at 1 n.1). That change is reflected in the case-caption above and the Clerk is **DIRECTED** to change the party name accordingly.

attorney's fees.  (Id.).  Lofton styled the complaint against "Designer Shoe

Warehouse, Inc."  (Id.).

## II.    Facts pertaining to Lofton's motion for default judgment

The facts pertaining to the default judgment motion are virtually undisputed.

They are as follows.

According to the Georgia Secretary of State's website, "Designer Shoe

Warehouse, Inc.," an entity in "Automated Administrative dissolution/Revocation,"

has  as its registered agent Cecilia Zachary at 3295 River Exchange Dr., Suite 140,

in Norcross.  (Doc. 13-3 at 2).  "DSW Shoe Warehouse, Inc.," an active and

compliant corporate entity, has Corporation Service Company ("CSC"), at 40

Technology Parkway South, Suite 300, in Norcross, as its registered agent.  (Doc.

15-2 at 2).  The Plaintiff does not dispute that the latter entity is the proper

Defendant.

On November 13 and 25, 2014, the Court issued summons as to the

Defendant.  (Docs. 2 and 5).  The November 13 summons initially identified the

Defendant as "DSW, Inc. (Designer Shoe Warehouse, Inc.)."  (Doc. 2).  However,

the "DSW, Inc." and the parentheses were crossed out and initialed, leaving the

name of the Defendant as "Designer Shoe Warehouse, Inc." (Id.).  The November 25 summons listed "Designer Shoe Warehouse, Inc." as the Defendant.  (Doc. 5).

On November 25, Lofton filed a return of service.  (Doc. 4).  That document reflected service of the summons on Alisha Smith on behalf of "Designer Shoe Warehouse, Inc." (Id.).  Alisha Smith is a CSC Coordinator in Norcross.  (Doc. 6-3).

On November 25—the same day reflected in the return of service—CSC sent a letter to Plaintiff's Counsel rejecting service of process.  (Doc. 13-2 at 2).  In that letter, CSC stated that, according to state records, it was not the registered agent "for the company [Lofton was] trying to serve," which was listed at the top of the letter as "Designer Shoe Warehouse, Inc." (Id.).

On December 3, 2014, Lofton again served CSC, after writing "DSW Shoe, Inc." as the defendant's name on the November 13 summons.  (Doc. 13-4 at 2-3; see also Doc. 2).  CSC forwarded notice of the summons to the Defendant that same day.  (Doc. 13-4 at 2).  Plaintiff has not filed a return of the December 3 service with the Court.

An e-mail from defense counsel to Plaintiff's counsel reflected that the two had spoken on December 18, 2014.  (Doc. 15-1; Doc. 16-3).  In the e-mail, defense

counsel writes that the two had discussed, earlier that day, that the Defendant had received only the second attempted service.  (Id.).

On December 23, 2014, Lofton filed the instant motion for a default judgment.  (Doc. 6).  On December 24, the Defendant filed a motion to dismiss the complaint.  (Doc. 7).  On January 23, 2015, the undersigned held a telephone conference concerning the motion, but no resolution was reached.  (Doc. 12).  On January 30, 2015, the Defendant filed a timely response to the default judgment motion, and, on February 12, the Plaintiff filed a reply.  (Docs. 13, 15).

## III.   Discussion

### a.   Lofton is not entitled to a default judgment

Lofton is correct that the improper party name on a summons does not, in and of itself, automatically invalidate service.  See Drill South, Inc. v. Int'l Fid. Ins. Co., 234 F.3d 1232, 1238 & n.11 (11th Cir. 2000).  However, Lofton does not cite to a case that covers the scenario here.  Each of the cases that he cites to involved service on an actual employee of the target company.  Here, Lofton served the Defendant through a registered agent.  The summons and the complaint both listed "Designer Shoe Warehouse, Inc" as the named defendant, which was incorrect.  In the hands of an officer of the proper defendant, which had a similar corporate name,

4

service may have been substantially compliant with the notice requirement notwithstanding the mistaken name.  However, with service on the registered agent, particularly where "Designer Shoe Warehouse, Inc" is a separately registered entity with a different designated agent, the mistake is more significant.

In another context, the Supreme Court has suggested that service through a registered agent, where the entity name was incorrect, was not an effective service. See Schiavone v. Fortune, 477 U.S. 21, 23, 27-29, 106 S.Ct. 2379, 2381, 2383-84, 91 L.Ed.2d 18 (1986) (in deciding whether an amended petition related back for statute or limitations purposes, service naming "Fortune" was not sufficient to serve "Time," Fortune's parent company).

An Alabama District Court recently rejected a similar argument to Plaintiff's. Davis v. Country Cas. Ins. Co., 2013 WL 3874709, *4 (N.D. Ala. Jul. 25, 2013). That decision turned, in part, on Alabama law not applicable here.  However, it also recognized that the Federal Rules of Civil Procedure allow service through an agent for the purpose of ensuring that a defendant receives notice of the suit.  Id.  The Court reasoned that the basic rationale for service through an agent was not met where the summons does not allow the agent to discern the proper defendant.  Id. While it is true that the name on the summons here is similar to the proper corporate

5

name of the defendant, the fact that the name on the summons matched the name of a different registered corporate entity was sufficient to undermine the agent's ability to properly discern the intended defendant.  Moreover, the Plaintiff knew of the agent's concern.  The agent refused service, notified Plaintiff, and Plaintiff served the agent again, this time with the proper entity listed as defendant.

While it seems clear that the initial service here was not sufficient, I need not make such a definitive finding.  Even if I were to assume that service occurred on November 25, a default judgment would be inappropriate for several reasons.  First, the motion is premature, as there has not yet been an entry of default under Fed.R.Civ.P. 55(a), a prerequisite for a Rule 55(b) default judgment.  See Sun v. United States, 342 F.Supp.2d 1120, 1124 n.2 (N.D. Ga. 2004); see also Travelers Cas. and Sur. Co. of Am., Inc. v. East Beach Dev., LLC, 2007 WL 4097440, *1 (N.D. Ala. Nov. 14, 2007) (collecting cases).

The Eleventh Circuit has recently held that the "good cause" standard—found in Rule 55(c) as the standard for evaluating a motion to set aside a default or default judgment—is the appropriate standard to apply where one party moves for a default judgment and the other party opposes the judgment, even where no formal entry of default has occurred.  Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337-38 (11th Cir.

2014).  Whether "good cause" exists is a liberal standard and is situation dependent.
Id. at 1337 n.7.  Factors to be considered included whether the party's conduct was
wilful or culpable, whether prejudice would result to the non-defaulting party, and
whether the defaulting party promptly corrected the error.  Id.  Here, if the
Defendant's answer was late, the Defendant easily had "good cause" to justify the
late filing.  There is nothing apparently culpable about Defendant's conduct, as it
appears that it did not actually receive notice of the suit until Plaintiff completed a
proper summons.  Further, Lofton has pointed to no prejudice to him resulting from
any delay. Defendant's responsive motion to dismiss was filed within a month of the
initial service attempt, and one day after Plaintiff's motion for a default judgment.
(See Docs. 6, 7).

Beyond the "good cause" standard to set aside a default, the entry of a default
judgment is left to the Court's discretion.  Hamm v. DeKalb Cnty., 774 F.2d 1567,
1576 (11th Cir. 1985).  Entry of a default judgment is a "drastic remedy," to "be
used sparingly" and "only in extreme situations."  Mitchell v. Brown & Williamson
Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002) (quoting Wahl v. McIver,
773 F.2d 1169, 1174 (11th Cir. 1985)).  In Wahl, the Court held that the lower court
acted within its discretion in not entering a default judgment where there was no

7

showing of prejudice and answers were filed "within a short time" after they were due, even though the delay was "unexplained." Wahl, 773 F.2d at 1174. Here, the Defendant responded a short time after a motion would have been due from the first attempt at service, no prejudice has been shown, and, as detailed above, any delay was easily explained.

In light of all of the above, Lofton's motion for a default judgment is due to be denied.

### b. Counsel's pursuit of default judgment was objectively in bad faith, and attorneys' fees are an appropriate sanction

The Court is entitled to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. This Court's authority to issue sanctions for vexatious conduct by attorneys is coextensive with the discretion afforded to it by § 1927. Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2006). The Defendant in this case has requested, under that authority, that the Court order that Plaintiff's counsel be required to pay the attorneys' fees spent litigating the motion for default judgment. (Doc. 13 at 7-8).

8

Absent a finding of "bad faith" on the attorney's part, sanction under § 1927 is inappropriate.  Stansell v. Revolutionary Armed Forces of Colombia, 771 F.3d 713, 734 n.15 (11th Cir. 2014).  In the § 1927 context, however, "bad faith" is not based on the attorney's subjective intent.  Amlong & Amlong, 500 F.3d at 1239-40. Rather, the "bad faith" standard is met where an attorney's conduct is "so egregious that it is 'tantamount to bad faith.'"  Id.  (quotation omitted).  Bad faith is shown where an attorney "knowingly or recklessly pursues a frivolous claim."  Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010).

I find that Plaintiff's counsel's objective conduct in pursuing the instant default judgment motion was in bad faith.  I assume that, subjectively, counsel believed that the initial service was proper.  However, it is not disputed that, before he filed the December 23 motion, counsel received notice of refused service, (Doc. 13-2 at 2), and discussed with (or at the very least, was made aware of via e-mail from) opposing counsel the naming error in the first attempted service, (Doc. 15-1). Counsel also re-served the Defendant under its proper corporate name, but never filed proof of that service with the Court.  (Doc. 13-4 at 2-3).  Counsel then moved for a default judgment, but mentioned nothing about the issues with the initial service.  (Doc. 13).  Instead, counsel merely asserted that he perfected service on

9

November 25 and that the Defendant had failed to file a responsive pleading.  (Id.).

Even with the assumption that counsel believed the initial service to be proper, he

could not, objectively, have reasonably believed that his subsequent actions,

including affirmatively redoing service and communicating with defense counsel,

were not relevant.

    In short, Plaintiff's counsel made what could have been a relatively

inoffensive error—subtly misnaming a corporate defendant.  After learning of the

error, counsel took the appropriate step of refiling the service with the proper name

(although he did so by handwriting an amendment on a summons previously issued

by the Court).  However, rather than file a return of that service and proceed from

there, counsel attempted to benefit from his error by seeking a default judgment

based on the earlier service date.  I assume that counsel did not set out from the

beginning to obtain a surreptitious default.  However, moving for a default

judgment, particularly in light of the standard under which such motions are

evaluated, after knowing that service was initially refused was, at best,

inappropriate.  Filing such a motion without apprising the Court of all of the

relevant facts was objectively in bad faith.  Accordingly, I recommend that

Defendant's request for attorney's fees be granted.  Any such award will be limited

to the fees associated with Defendant preparing and filing its response (Doc. 13).
Should the District Judge agree with this recommendation, the case may be
resubmitted to the undersigned for a determination of costs.

### c.    The Defendant's motion to dismiss should be granted

I now turn to Defendant's (hereinafter "DSW") motion to dismiss, (Doc. 7).
DSW argues that Lofton's Title VII claims are untimely and that each of his state
law claims fail to state a proper claim.  (Doc. 7-1).  I will consider each count of
Plaintiff's complaint in turn.

### i.    Lofton's Title VII claims are time-barred

In his complaint, Lofton raises three claims pursuant to Title VII.  (Doc. 1).
Specifically, he alleges sexual harassment (Count 1), gender discrimination (Count
2), and retaliation (Count 3).  (Id. at 10-13).

DSW argues that Lofton's Title VII claims are untimely.  (Doc. 7-1 at 4).  It
asserts that Lofton received his right-to-sue letter on July 1, 2013, timely filed a suit
on September 23, 2013, which was dismissed, and then filed the instant suit on
November 12, 2014.  (Id.).  It further argues that O.C.G.A. § 9-2-61, Georgia's
renewal statute, could not render Lofton's Title VII claims timely because Title VII
contains its own statute of limitations.  (Id. at 6).

11

Lofton responds that Georgia's renewal statute does apply to his case because Title VII does not contain any provision governing the time to refile a suit. (Doc. 9 at 4). Lofton asserts that, as he filed the instant complaint within six months of his initial complaint being dismissed without prejudice, the instant Title VII claims are timely under the renewal statute. (Id. at 5-6).

The EEOC issued Lofton a right-to-sue letter on June 24, 2013. (Doc. 1-1 at 4). Lofton, proceeding pro se, initiated a Title VII complaint alleging sexual harassment, discrimination, and retaliation, on September 23, 2013. (CM/ECF for N.D. Ga., case no. 1:13-cv-3180 ("Lofton I"), Doc. 1-1). In November 2013, the undersigned recommended that the district court dismiss the complaint without prejudice because Lofton failed to return the court-issued summons and moved without apprising the court of his new address. (Id., Doc. 5). In December 2013, Lofton filed a change of address and filed a "motion for non dismissal." (Id., Docs. 8, 9). On June 16, 2014, the District Judge adopted my recommendation and dismissed the suit without prejudice. (Id., Doc. 9). Lofton's first suit was never served on a defendant. Lofton filed the instant suit, this time through counsel, on November 12, 2014. (Doc. 1).

12

Where the EEOC does not bring a discrimination suit on a claimant's behalf, the claimant has 90 days from notice of the EEOC's decision to bring his own civil suit.  42 U.S.C. § 2000e-5(f)(1).  Lofton's initial pro se complaint was brought within 90 days of the EEOC's notice.  (See Doc. 1-1 at 4; Lofton I, Doc. 1).  The instant complaint was brought more than one year after the right-to-sue letter, and, thus, is not timely.  (Doc. 1).

Lofton's argument that Georgia's renewal statute, O.C.G.A. § 9-2-61(a), renders his Title VII claims timely is wrong.  The renewal statute provides, in relevant part:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, . . . .

O.C.G.A. § 9-2-61(a).

The Eleventh Circuit has held that renewal statutes, specifically Georgia's, do not apply to a federal cause of action that is limited by a federal statute of limitations.  Phillips v. United States, 260 F.3d 1316, 1319 (11th Cir. 2001) (discussing the Federal Tort Claims Act).  Therefore, the renewal statute can apply

13

to a 42 U.S.C. § 1983 claim, because § 1983 does not contain its own statute of limitations.  Roberts v. Georgia, 228 F. App'x 851, 853-54 (11th Cir. 2007) (unpublished).  However, as Title VII contains its own timeliness requirement, 42 U.S.C. § 2000e-5(f)(1), the state renewal statute does not apply.  See Weldon v. Electronic Data Sys. Corp., 138 F. App'x 136, 138 (11th Cir. 2005) (unpublished); Roberts, 228 F. App'x at 853; see also Ingmire v. Target Corp., 520 F. App'x 832, 833-34 (11th Cir. 2013) (unpublished) (applying the same rationale to claims under the ADA and ADEA).

The cases holding that the renewal statute does not apply in a Title VII case are unpublished and therefore non-binding.  However, I have found no Eleventh Circuit case, published or otherwise, reaching a different conclusion, and I see no reason to depart from the persuasive authority.  Further, I see no meaningful distinction in this context between Title VII and the FTCA, at issue in the published Phillips decision.

Even if Georgia's renewal statute were available to revive a Title VII claim, it would be of no help to Lofton.  The language of the statute provides that a claim may be renewed after "*the plaintiff* discontinues or dismisses" the action.  O.C.G.A. § 9-2-61 (emphasis added).  The Eleventh Circuit has recognized that the renewal

14

statute does not apply following a court ordered dismissal.  See Oduok v. Phillips, 154 F. App'x 878, 881 (11th Cir. 2005) (unpublished).  In another case, citing to state law, the Circuit recognized that the renewal statute does not apply where the court made a judicial determination that dismissal is authorized.  Roberts, 228 F. App'x at 853-54 (citing Hobbs v. Arthur, 444 S.E.2d 322, 323 (Ga. 1994).

Here, it is not disputed that Lofton's initial complaint was dismissed *by the court*.  (See Lofton I, Docs. 5, 9).  Lofton, in fact, opposed the dismissal.  The fact that the dismissal was without prejudice has no apparent bearing on the question of whether the renewal statute would apply.

Georgia's renewal statute does not apply to Title VII claims, nor does it apply in cases where the original suit was dismissed by the court, as opposed to the plaintiff.  Therefore, the relevant date for determining if Lofton's Title VII claims are timely is November 12, 2014—the date he filed the instant complaint.  The instant complaint was filed more than one year after the EEOC issued a right-to-sue letter.  The action, therefore, is untimely, and Lofton's Title VII claims are due to be dismissed.

15

ii.     The Court should decline to exercise jurisdiction over
        Lofton's remaining state law claims

Lofton states in his complaint that his state law claims fall under this Court's supplemental jurisdiction.  (See Doc. 1 at 2).  A district court has discretion not to hear supplemental claims when it has dismissed all of the claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Eleventh Circuit has encouraged district courts to exercise that discretion and to dismiss all supplemental claims without prejudice when all of the plaintiff's original-jurisdiction claims have been dismissed prior to trial.  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999).

Beyond the general preference, it also seems prudent to decline the exercise of supplemental jurisdiction here because the question of whether DSW can be held liable for sexual harassment by its employees turns on a question of state law that is not entirely clear cut.  It is true that an employer cannot be directly liable for sexual harassment by an employee committed outside the scope of employment.  See Piedmont Hosp., Inc. v. Palladino, 580 S.E.2d 215, 217 (Ga. 2003).  However, an employer can be held liable for an employee's sexual harassment if it is determined to have ratified that conduct, which can occur through firing the victim-employee and not the perpetrator-supervisor.  See Trimble v. Circuit City Stores, Inc., 469

16

S.E.2d 776, 779 (Ga. Ct. App. 1996); <u>Newsome v. Cooper-Wiss, Inc.</u>, 347 S.E.2d

619, 622 (Ga. Ct. App. 1986).

DSW argues that the ratification theory of <u>Trimble</u> and <u>Newsome</u> was

overturned by <u>Travis Pruitt & Assocs., P.C. v. Hooper</u>, 625 S.E.2d 445 (Ga. Ct.

App. 2005) (<u>en</u> <u>banc</u>), to the extent that those cases allowed for suit against an

employer where the underlying tort was not performed within the scope of the

employment.  (Doc. 11 at 8-9).  That contention is incorrect.  Under Georgia law,

only a majority of judges in an <u>en</u> <u>banc</u> sitting of the Court of Appeals can overrule

a previous decision of a panel of that Court.  O.C.G.A. § 15-3-1.  As the special

concurrence in <u>Hooper</u> recognized, only six of the twelve judges hearing the case

thought <u>Trimble</u> and the other cases should be overruled, while the other six

disagreed.  <u>Id.</u> at 453.  Accordingly, it appears that the ratification theory is

contentious, yet still valid, under Georgia state law.

I also note that Lofton will not be prejudiced by dismissal of the claims, as

they are likely already time-barred.  Lofton asserts that, because he was fired on

November 28, 2012, his November 12, 2014 complaint was within the two-year

statute of limitations.  (<u>See</u> Doc. 9 at 18); <u>see</u> <u>also</u> O.C.G.A. § 9-3-33.  However, the

allegations that support his state law claims for assault, battery, and intentional

17

infliction of emotional distress (and, by extension, negligent hiring/retention)
exclusively involve conduct that occurred on November 11, 2012—one day outside
of the statute of limitations.  Therefore, even if the Court allowed Lofton to attempt
to plead diversity jurisdiction or to voluntarily dismiss his state claims and invoke
Georgia's renewal statute in state court, the claims would nonetheless likely be
time-barred.  Accordingly, the Court should simply decline to exercise supplemental
dismiss the claims without prejudice.

## IV.    Conclusion

In light of the above, I make the following recommendations.  I
**RECOMMEND** that Lofton's motion for a default judgment, (Doc. 6), be
**DENIED**; that DSW's request for sanctions in the form of attorneys' fees, (Doc. 13
at 1, 7-8), be **GRANTED**; that DSW's motion to dismiss, (Doc. 7), be **GRANTED**;
and that Plaintiff's Title VII claims be **DISMISSED WITH PREJUDICE** and his
remaining state law claims be **DISMISSED WITHOUT PREJUDICE**.

Should the district court adopt these recommendations, the clerk should

resubmit the case to the undersigned for a determination of the amount of sanctions.

IT IS SO RECOMMENDED this 8th day of April, 2015.

*Gerrilyn G. Brill*

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

19